## Norfolk

## SMOKY MOUNTAIN SECRETS, INC.

v.

## VIRGINIA EMPLOYMENT COMMISSION

No. 0501-90-2

Decided April 23, 1991

COUNSEL

Laura B. Hernandez (David C. Kohler; Christian, Barton, Epps, Brent & Chappell, on briefs), for appellant.

George L. Hiller, Third year Practice Rule (Supervised by Stephen Chapple, Assistant Attorney General; Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—Smoky Mountain Secrets, Inc., contends that the Circuit Court for the City of Richmond erred when it upheld the Virginia Employment Commission's ruling that the company was not exempt from the payment of unemployment insurance for its sales and delivery representatives under Code § 60.2-219(21). We

affirm the judgment because substantial evidence supports the commission's decision that the delivery representatives were not "engaged in the trade or business of selling" and that Smoky Mountain did not prove that its sales representatives obtained "substantially all of the remuneration" paid them based on commissions. *See* Code § 60.2-500(B)(1).

Smoky Mountain is engaged in the business of selling gift box sets of jams, sauces, and seasonings. Orders for gift boxes are derived largely through the efforts of the sales representatives who make telephone calls and solicit the sales. The sales representatives follow a script which informs the prospective buyers that the call is on behalf of the Virginia State Police Association to raise funds for the Association. Sales representatives are paid a commission of $3.35 for each gift box they sell. They are paid their commissions on a monthly basis. However, during the interim period they are permitted to make a weekly draw against these commissions in the amount of $3.35 for each hour they have worked. At the end of each month, the weekly draws are deducted from the total commissions and the remaining balance is paid to the sales representative.

Smoky Mountain also employs delivery representatives. Delivery representatives are paid $2.80 for each delivery they make. They also receive a position outline informing them that they are commission agents and that no taxes will be withheld for them. Delivery representatives do not actively solicit orders for gift boxes. However, they will accept reorders when making deliveries.

Under Code § 60.2-219(21) "direct sellers" are exempt from unemployment tax. To qualify under the direct seller exemption, employees must meet three criteria: (1) they must be "engaged in the trade or business of selling or soliciting the sale of consumer products to a consumer in the home or otherwise than in a permanent retail establishment"; Code § 60.2-219(21)(a)(2); (2) "[s]ubstantially all of the remunerations for the services performed as a direct seller" must be based on commission; Code § 60.2-219(21)(b); and (3) "[t]he services performed by the person [must be] performed pursuant to a *written contract* . . . and such contract [must provide] that the person will not be treated as an employee with respect to such services for federal tax purpose." Code § 60.2-219(21)(c) (emphasis added).

The sales representatives clearly meet the criteria of being "engaged in the trade or business of selling" as provided by Code § 60.2-219(21)(a)(2). However, whether the delivery representatives meet this criteria is in dispute. The appellant contends that delivery representatives fall within the category of those "engaged in the trade or business of selling" because delivery is an integral part of its sales activities. Appellant argues that solicitation and delivery functions are interdependent, because it could not have sales if it did not have delivery.

To include delivery people under the direct seller exemption would expand the direct seller exemption to any number of employees. The appellant's argument that sales and delivery are interdependent could be applied to all functions of its business and would allow for exemption of all employees. This expansive reading of the direct seller exemption is not in keeping with the statutory purpose, as "[e]xemptions in the Act should be strictly construed against the alleged employer." *See Virginia Employment Comm'n v. A.I.M. Corp.*, 225 Va. 338, 346, 302 S.E.2d 534, 539 (1983). Therefore, we hold that the trial court did not err in upholding the VEC's finding that the delivery representatives were not "engaged in the trade or business of selling or soliciting sales."

We turn next to whether "substantially all of the remuneration" paid to sales representatives is based on commissions. *See* Code § 60.2-219(21). " 'Commissions,' when 'used to express compensation for services rendered,' usually denotes 'a percentage on the amount of moneys paid out or received.' " *Home Beneficial Life Ins. Co. v. Unemployment Compensation Comm'n*, 181 Va. 811, 820, 27 S.E.2d 159, 163 (1943). " 'Salary' is generally defined as 'a fixed annual or periodical payment for services, depending upon the time and not upon the amount of services rendered.' " *Id*. at 821, 27 S.E.2d at 163. "The controlling element in determining whether the amount to be received is upon a commission or salary basis is whether that amount, by whatever name it may be called, is absolute and fixed, regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commission." *Id*. at 821, 27 S.E.2d at 163.

Smoky Mountain asserts that the direct seller exemption requires only that "substantially all" remuneration paid to the employee must be based on commission and does not require that the sole compensation be from commission. Smoky Mountain con-

tends that its method of compensation by which employees are allowed to make a weekly draw against their monthly commission has the effect of merely advancing them a commission and not paying them an hourly salary. Because the Fair Labor Standards Act requires that it pay its sales representatives a minimum wage, the compensation plan used by Smoky Mountain is designed to meet this requirement by allowing the sales representatives to draw against commissions in an amount equal to a minimum wage. The special commissioner, in part, based his ruling denying the exemption on the fact that if a sales representative earned a commission of less than a minimum wage, the excess would be forgiven and, therefore, the employee would be earning a salary rather than a commission. Smoky Mountain asserts that there is no evidence in the record that any employee has ever failed to earn more than the minimum wage. That is so, but there also is no evidence in the record to the contrary. Smoky Mountain, the employer, had the burden of proving that it is exempt from the provisions of the statute. *A.I.M. Corp.*, 225 Va. at 347, 302 S.E.2d at 539.

Thus, Smoky Mountain failed to establish that "substantially all" remuneration paid its sale representatives is based on commission. A guaranteed weekly minimum payment made to a sales agent prior to the payment of any commissions is a salary and not a commission. *Home Beneficial Life Ins. Co.*, 181 Va. at 821, 27 S.E.2d at 163. Thus, the VEC's determination that the amount of the draw equal to the minimum wage is salary is a reasonable interpretation of the compensation arrangement. As the VEC asserts, to have "substantially all" of the remuneration based on commission, the employee would have to be paid a considerable amount in excess of his draw. Here, the record fails to disclose what percentage of remuneration paid to sales representatives is from commissions earned. Thus, Smoky Mountain has failed to prove its exemption on the basis of commission sales.

Each sales and delivery representative receives a position outline which describes the rights and obligations of the employee and employer, explains that the sales representative is a commission agent, and states that no tax will be withheld. The trial court upheld the VEC's ruling that this outline did not constitute a written contract. Having determined that the sales and delivery repre-

sentatives are not exempt on other grounds, we do not reach the issue of whether the written position outline provided both sales and delivery employees while unsigned is sufficient to meet the requirement of a written contract under Code § 60.2-219(21)(c).

*Affirmed.*

Baker, J., and Willis, J., concurred.